IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

WILLIE GARNER                          §
        TDCJ-CID #606635               §
v.                                     §          C.A. NO. C-11-169
                                       §
CANDACE MOORE, ET AL.                  §

## MEMORANDUM AND RECOMMENDATION
## TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional

Institutions Division ("TDCJ"), and is currently incarcerated at the McConnell Unit in Beeville,

Texas.  (D.E. 1, at 2).  Proceeding pro se, he filed a civil rights action pursuant to 42 U.S.C.

§ 1983, alleging that Defendants retaliated against him for exercising his right to access the

courts and file administrative grievances.  (D.E. 1, at 6-12).  Pending is Defendants' motion for

summary judgment.  (D.E. 39).  Plaintiff has filed a response opposing this motion.  (D.E. 44).

For the reasons that follow, it is respectfully recommended that Defendants' motion for summary

judgment be granted and this action be dismissed.

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28

U.S.C. § 1331.

## II.  PROCEDURAL HISTORY

Plaintiff filed this action on May 23, 2011.  (D.E. 1).  Subsequently, a Spears[1] hearing

was held on June 9, 2011.  On June 13, 2011, his claims of retaliation against Candace Moore,

Officer Jesse Walden, Officer Belinda Fernandez, and Officer Joe Martinez were retained, and

all other claims against all other named Defendants were dismissed.  See Garner v. Moore, No.

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

C-11-169, 2011 WL 3444198 (S.D. Tex. June 13, 2011) (unpublished) (memorandum and

recommendation), adopted by Garner v. Moore, No. C-11-169, 2011 WL 3444320 (S.D. Tex.

Aug. 5, 2011) (unpublished).

Defendants Martinez and Moore filed an answer on July 19, 2011, (D.E. 11), and

Defendant Fernandez filed her answer on August 25, 2011.  (D.E. 27).  During a telephonic

hearing on September 14, 2011 regarding service on Jesse Walden, Plaintiff orally moved to

dismiss him.  On September 20, 2011, a memorandum and recommendation was issued

recommending that Officer Walden be dismissed without prejudice.  (D.E. 32).  On October 18,

2011, the Court adopted this recommendation.  (D.E. 38).  On December 22, 2011, Defendants

submitted this motion for summary judgment.  (D.E. 39).  Plaintiff filed a response opposing

dismissal on February 21, 2012.  (D.E. 44).

### III.  PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that Defendants Moore, Fernandez, and Martinez retaliated against him

due to a lawsuit he had previously filed against prison officials, as well as because he had

previously complained about his difficulties accessing the prison law library.  Specifically, he

alleges that at various times (1) Defendants Moore and Martinez refused to act when Officer

Walden threatened to keep him from the library, (D.E. 1, at 6-8; D.E. 39-1, at 5-6, 22-23); (2)

Defendants failed to provide him with sufficient legal materials, (D.E. 1, at 9-12; D.E. 39-2, at 4-

5, 20-21); and (3) Defendant Moore denied him access to the law libraries.  (D.E. 1, at 8-9; D.E.

39-1, at 3, 22-23).

### IV.  SUMMARY JUDGMENT EVIDENCE

Defendants offer the following documents in support of their motion for summary

judgment:

Exhibit A:     Relevant portions of Plaintiff's Texas Department of Criminal Justice
               Grievance records, with business records affidavit;

Exhibit B:     Affidavit of Candace Moore;

Exhibit C:     Affidavit of Joe Martinez;

Exhibit D:     Affidavit of Belinda Fernandez.

(D.E. 39, at 2).  Plaintiff has submitted a verified complaint, which appears to be incorporated in

his unsworn brief filed in response to the summary judgment motion.  (D.E. 1, 44).

    The summary judgment evidence, including Plaintiff's testimony at the <u>Spears</u> hearing,

establishes the following:

    On July 16, 2007, Plaintiff complained to the Court about his ongoing difficulty

obtaining legal materials, which was hampering his ability to prosecute a then-pending action.[2]

(D.E. 1, at 6).  Defendant Moore participated in a telephonic hearing held on July 20, 2007 to

resolve this matter.  <u>Id.</u>; (D.E. 39, at 6).

    On April 30, 2009, Plaintiff submitted a Step 1 grievance numbered 2009143670

complaining that Officer Walden threatened to deny him library sessions unless he used his

correct name when filling out an I-60.  (D.E. 39-1, at 5-6).  Defendants Moore and Martinez

were present and observed this conversation, but did not take action.  <u>Id.</u> at 5.  When Plaintiff

spoke to Defendant Moore about the situation, she allegedly replied that "what ever [sic] he does

I'll support it."  <u>Id.</u>  In the grievance, he claimed that Officer Walden and Defendant Moore were

retaliating against him for previously complaining to the Court almost two years ago.  <u>Id.</u> at 6.

    When questioned during the TDCJ investigation, Officer Walden and Defendant Moore

---

[2] In his previous lawsuit, <u>Garner v. Morales</u>, No. C-06-218 (S.D. Tex.), Plaintiff challenged certain prison
policies that prohibited him from wearing a beard or a kufi.  That case proceeded to a bench trial on his Religious
Land Use and Institutionalized Persons Act ("RLUIPA") claim.  By judgment entered on May 19, 2011, Plaintiff
was granted injunctive relief to wear a quarter inch beard for religious purposes.  His request to wear a kufi was
denied.

both clarified that Plaintiff had not signed in using his commitment name "Willie Lee Garner." Id. at 9-10.  Instead of using his commitment name, Plaintiff was signing his I-60 requests with the name "Willi Free I Gar'ner."  Id. at 13.  The grievance investigator also examined (1) an inter-office communication circulated to the prison population on January 12, 2009 specifying that access to the law library was contingent on submitting an I-60 request with the applicant's correct name, id. at 17; (2) the TDCJ Unit Law Library Rules of Conduct, which stipulate that "[t]o be scheduled for law library access, each offender will be required to provide their name," id. at 18; and (3) a portion of prison regulation ATC-034 requiring inmates to use their "commitment name" on their mailing envelopes.  Id. at 16.

Warden Jackson denied this grievance on June 3, 2009 after finding that Plaintiff had not been denied access to the library.  Id. at 6.  Plaintiff filed a Step 2 grievance on June 7, 2009 asserting that he had been barred from using the library for a month.  Id. at 3-4.  This Step 2 grievance was denied on July 16, 2009 by Assistant Director Garcia because there was no evidence that he was harassed during his library session, and TDCJ policy required inmates to sign their legal name on all official documents.  Id. at 4.

On July 5, 2009, Plaintiff filed a Step 1 grievance numbered 2009184857 regarding an exchange with Officer Walden that occurred as he was signing out of the library.  Id. at 23.  In this grievance, he alleged that Officer Walden told him not to send anymore I-60 requests for library sessions because he had failed to comply with prison grooming polices and his name was spelled incorrectly.  Id. at 22.  Officer Walden also warned him not to make further threats to file grievances and lawsuits.  Id.  When Plaintiff spoke to Defendant Moore, she told him that if Officer Walden decided to bar him from the library, she would support that decision.  Id. Plaintiff also claimed that on June 26, 2009, he was arbitrarily excluded from the library for an

4

indefinite period of time.  Id.  He attributed this treatment to retaliation for exercising his right of access to the courts.  Id. at 22-23.

The TDCJ's investigation did not uncover any wrongdoing.  Id. at 29.  In Officer Walden's official statement, he denied telling Plaintiff to stop submitting I-60 requests.  Id. at 25.  He further explained that Plaintiff was instructed on how to properly fill out an I-60, but he nevertheless insisted on submitting his I-60 incorrectly.  Id. at 25.  His June 25, 2009 I-60 request was signed "Willi Free I Gar'ner."  Id. at 26.  He also used the name "Gar'ner" when signing the McConnell Unit's library log on June 26, 2009, and it was noted that Officer Walden told him to use his commitment name on that occasion.  Id. at 27-28.

Following this investigation, Warden Jackson denied this grievance after concluding that Plaintiff was not banned from the library.  Id. at 23.  Rather, his inability to use the law library was attributed to his failure to properly complete an I-60 request.  Id.  Plaintiff filed a Step 2 grievance asserting that the denial of his use of the law library for failure to properly complete an I-60 was a mere pretext for retaliatory acts.  Id. at 20.  Vickie Barrow denied this grievance on September 14, 2009 after determining that Plaintiff has been "scheduled for law library sessions in accordance with ATC-030."  Id. at 21.

Plaintiff filed another Step 1 grievance numbered 2010060546 on December 8, 2009 concerning requested indigent legal correspondence supplies that were never delivered.  (D.E. 39-2, at 4-5).  He spoke with Defendant Martinez, who told him that he "kn[e]w nothing about [Plaintiff's] material."  Id. at 4.  Plaintiff believed that Defendants Fernandez and Moore were keeping him from receiving his requested materials as a retaliatory measure for filing grievances and pursuing a civil action in federal court.  Id.  During the investigation, Defendant Moore indicated that Plaintiff had been receiving cases on December 17 through December 19, 2009, as

well as on the date of January 4, 2010.  Id. at 11.  Additionally, Plaintiff signed his name "Willi Free I Gar'ner" on I-302 supply request forms and I-60s on December 1, 2009, id. at 12, December 7, 2009, id. at 13, December 15, 2009, id. at 14, December 21, 2009, id. at 15, and December 28, 2009.  Id. at 16.

On January 15, 2010, Warden Crites found that this grievance was without merit because the law library did not have any record of I-60 requests that were properly completed by Plaintiff for the dates of December 1 and December 7, 2009.  Id. at 5.  His Step 2 grievance was denied by Ms. Barrow on February 26, 2010.  Id. at 3.  She acknowledged that the law library received a number of his I-302 forms, but also found that Plaintiff failed to provide adequate "justification to receive the below requested supplies" on the back of the form in accordance with the instructions.  Id.  Because he did not demonstrate that he exhausted his existing supply of materials or articulate a legitimate need for more, he was not entitled to receive the additional supplies.  Id.

Plaintiff's next Step 1 grievance numbered 2010073335 was filed on December 31, 2009. Id. at 20-21.  He claims that Defendants Moore, Fernandez, and Martinez denied his request for cases and indigent materials.  Id. at 20.  Although he received the legal cases after filing his December 8, 2009 grievance, he was still waiting for writ envelopes and other cases that he had more recently requested.  Id.  He again characterizes this treatment as a retaliatory effort to punish him for filing the previous civil action, sending letters to the Court, filing administrative grievances, and issuing threats about filing a new lawsuit against them.  Id.

The initial TDCJ investigation into this matter revealed no wrongdoing.  Defendant Moore indicated that Plaintiff received supplies on December 21 and December 28, 2009, as well as on January 6, 2010.  Id. at 24.  She conceded that he had requested writ envelopes, but he

6

had not properly completed the I-302 request.  Id.  Nevertheless, she provided him with writ envelopes on December 15, 2009 despite the defective I-302 request.  Id. at 25.  Defendant Moore further clarified that Plaintiff was not keeping his indigent supply requests separate from his requests for cases, and that this was causing a problem with processing his orders.[3]  Id. Moreover, Plaintiff continued to omit a statement of justification on the back of his I-302 requests, as required by the instructions.  Id. at 28, 30-32.  Following this investigation, Warden Guterrez denied the Step 1 grievance on February 10, 2010.  Id. at 21.  He noted that Plaintiff did receive indigent supplies as well as a requested writ envelope, and he also admonished Plaintiff to properly complete the request forms to ensure delivery of his requested materials.  Id.

Plaintiff then filed a Step 2 grievance on February 14, 2010 accusing Warden Guterrez of taking sides with Defendant Moore.  Id. at 18.  He claimed that every I-302 form written since December 1, 2009 requested a writ envelope, but that he only received it on January 12, 2010. Id.  He further lambasted the library's failure to provide photocopies of cases until December 15, 2009.  Id.  Upon further investigation, the TDCJ overturned the grievance because there were irregularities in the way the library was treating his requests.  Id. at 35.  Among the irregularities noted was their failure to date-stamp Plaintiff's I-60 requests, failure to list requests on a "PSTO" record, failure to report the requested items correctly on the PSTO, providing business envelopes without also providing paper, and providing paper without justification.  Id.  On March 11, 2010, Ms. Barrow replied to the Step 2 grievance noting that Plaintiff's requested

---

[3] The record reflects that Plaintiff's December 1 and December 7, 2009 I-60 requests asked for both legal supplies and cases simultaneously.  (D.E. 39-2 at 27, 29).  It appears that he only received his case request through his December 1, 2009 I-60 request and conversely received only his indigent supply through his December 7, 2009 I-60 request.

supplies will be issued and advised him to present only one grievance per issue.[4]  Id. at 19.

Defendants have each produced affidavits disclaiming any wrongdoing on their part. (D.E. 39-3; D.E. 39-4; D.E. 40).  In addition, Defendant Moore acknowledges that there were several occasions when Plaintiff was not granted indigent legal materials; however, she maintains that these denials resulted from his failure to articulate the reasons why he needed those materials.  (D.E. 39-3, at 2).  She also affirms that Plaintiff makes multiple requests on the same form, in contravention of TDCJ rules.  (D.E. 39-3, at 2).  Nevertheless, she avers that the law library has always erred on the side of fulfilling his requests whenever possible.  Id. Defendant Martinez adds that Plaintiff has always enjoyed full access to the law library even though he has been using an alias, submits improper requests, and disregards grooming standards by keeping a beard.  (D.E. 39-4, at 2).

## V.  DISCUSSION

Defendants move for summary judgment, arguing that Plaintiff lacks standing to sue and has not fully exhausted his administrative remedies.  (D.E. 39, at 4).  Defendants also contend that they are entitled to qualified immunity.  Id.

### A.      The Legal Standard For A Summary Judgment Motion.

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp.,

---

[4] Plaintiff's most recent Step 1 grievance numbered 2011023043 was filed on October 5, 2010.  (D.E. 39-2, at 43-44).  The substance of this grievance concerns the allegation that Defendant Moore and other library staff members of tampering with his indigent supply envelope on or around September 29, 2010.  Id. at 43.  Because Plaintiff's complaint makes no mention of any wrongdoing perpetrated by Defendants after January 22, 2010 relating to this incident, (D.E. 1, at 12), it falls outside the scope of this action.

278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992) (citations omitted). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.     Plaintiff Failed To Exhaust All Of His Claims.**

Defendants argue that Plaintiff has not exhausted two instances of retaliation. (D.E. 39, at 9). They contend that the alleged denial of legal materials in August and September 2009 was

never presented in an administrative grievance.  (D.E. 1, at 9).  They also claim that Plaintiff never exhausted his allegation that Defendant Moore ignored two of his requests for time in the law library on or around October 6, 2009.

In the Prison Litigation Reform Act, Congress mandated that inmates must exhaust their administrative remedies prior to filing civil rights actions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).  The Supreme Court has clarified that a prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  However, an inmate's failure to exhaust is an affirmative defense that must be raised by the defendants.  See Jones v. Bock, 549 U.S. 199, 216 (2007).

The purpose of the exhaustion requirement is to alert jail officials to problems so that the prison has a chance to address the claims before they reach federal court.  Woodford, 548 U.S. at 94.  As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding."  Booth, 532 U.S. at 737.

In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies.  The court noted that one of the purposes of the exhaustion requirement is to give officials "'time and opportunity to address complaints internally.'"  Id. at 516 (citations omitted); accord Wilbert v. Quarterman, 647 F. Supp. 2d 760, 766 (S.D. Tex. 2009) (citation omitted).  In addition, the nature of the complaint will influence how much detail is necessary.  Johnson, 385 F.3d at 517; Wilbert, 647 F. Supp. 2d at 766 (citation omitted).  For example, a complaint about a correctional officer should identify a specific person, whereas a complaint about a prison condition might not need to identify any individual.  Johnson, 385 F.3d at 517; Wilbert, 647 F. Supp. 2d at 766 (citation omitted).

The TDCJ provides a two-step procedure for presenting administrative grievances.  Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam) (citation omitted).  An inmate properly exhausts a claim by presenting it in Step 1 and Step 2 grievances.  See Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy ¶ IV (Jan. 31, 1997)).  Inmates must submit a Step 1 grievance within fifteen days of the alleged incident or occurrence giving rise to the grievance, and a Step 2 grievance must be submitted within fifteen days of the date that the Warden signed the Step 1 grievance.  Texas Dep't of Criminal Justice, Offender Orientation Handbook 52 (2004), available at http://www.tdcj.state.tx.us/publications/cid/OffendOrientHbkNov04.pdf.  A claim must be pursued through both grievance steps before it can be considered exhausted.  Johnson, 385 F.3d at 515 (citing Wright, 260 F.3d at 358).

The record supports Defendants' assertion that Plaintiff failed to exhaust all of the claims

11

he now brings.  The custodian of the Offender Grievance Records for the TDCJ affirms that she

only has on record five grievances that he filed from January 2009 to the present day: (1) April

30, 2009; (2) July 5, 2009; (3) December 8, 2009; (4) December 31, 2009; and (5) October 5,

2010.[5]  (D.E. 39-1, at 2).  No grievances were filed between July 5, 2009 and December 8, 2009.

Moreover, nothing in his December 8, 2009 grievance references any incident that occurred

during that intervening period.  (D.E. 39-2, at 4).  Although Plaintiff indicates that he filed at

least one Step 1 grievance during this time that was never answered, (D.E. 1, at 10), he does not

provide any evidence outside of his pleadings that any unanswered grievances were properly

presented to the TDCJ, or that they ever existed.[6]  See Fed. R. Civ. P. 56(e) ("When a motion for

summary judgment is properly made and supported, an opposing party may not rely merely on

allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise

provided in this rule–set out specific facts showing a genuine issue for trial."); Anderson, 477

U.S. at 248-49 (citation omitted) (same).  Accordingly, it is respectfully recommended that

Plaintiff has failed to exhaust any retaliation claim that is based on incidents that occurred

between August 2009 through the end of November 2009.[7]

---

[5] Plaintiff's most recent grievance, filed on October 5, 2010, accused Defendant Moore and other library
staff members of tampering with his indigent supply envelope, which he had given to the library in order to mail to
his attorney.  (D.E. 39-2, at 43-44).  Plaintiff has omitted all reference to this incident from his complaint, so it is not
being litigated in this action.

[6] Plaintiff claims that a number of grievances have not been answered or were returned to him, including
one that was not processed due to his failure to properly complete the grievance form.  See, e.g., (D.E. 1-1, at 6)
(grievance returned for failure to document an attempt at informal resolution).  It is likely that the reason some of his
grievances were not answered was because of a similar defect in filling out the grievance form, such as Plaintiff's
use of an alias instead of his official name.  In light of the affidavit prepared by the custodian of Offender Grievance
Records, (D.E. 39-1, at 2), however, all accounts of retaliation that do not appear on grievances in the record have
not been properly exhausted before the TDCJ.

[7] In Plaintiff's response brief, he argues that he has properly exhausted his administrative remedies because
the Texas statute of limitations was tolled.  (D.E. 44, at 12-13).  It is apparent that he has confused the exhaustion
requirement with the requirement to timely file this action in court.

C.    **Defendants Are Entitled To Qualified Immunity.**

Defendants argue that they are entitled to qualified immunity because Plaintiff cannot establish one or more elements required for a retaliation claim.[8]  (D.E. 39, at 14).  In particular, they maintain that the asserted adverse retaliatory acts are <u>de</u> <u>minimis</u> and that he cannot show that they were the but-for cause of any perceived transgressions against him.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted).  "To discharge this burden, a plaintiff must satisfy a two-prong test."  <u>Atteberry v. Nocana Gen. Hosp.</u>, 430 F.3d 245, 253 (5th Cir. 2005).  "First, he must claim that the defendants committed a constitutional violation under current law.  Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  <u>Id.</u> (citations omitted).  While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer

---

[8] Plaintiff appears to construe Defendants' assertion of qualified immunity with that of Eleventh Amendment sovereign immunity, (D.E. 44, at 13-14), even though they do not explicitly address any possible Eleventh Amendment defense.  (D.E. 39, at 4).  Nonetheless, if Plaintiff's action could be construed as suing them in their official capacity, that claim is necessarily against the State and, as such, is barred by the Eleventh Amendment.  <u>See</u> <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 146 (1993).

mandatory.  Pearson, 555 U.S. at 236-37 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

> **1.**        **Step 1 – Plaintiff has not established a constitutional violation.**

To prevail on a § 1983 claim for retaliation, "'a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'"  Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006) (quoting McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998)).  In order to establish a retaliatory adverse act, the asserted retaliatory act must be "'capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'"  Bibbs v. Early, 541 F.3d 267, 270 (5th Cir. 2008) (quoting Morris, 449 F.3d at 686).  Some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights."  Morris, 449 F.3d at 686.  "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim."  Id.  Additionally, "[c]ausation requires a showing that 'but for the retaliatory motive the complained of incident ... would not have occurred.'"  McDonald, 132 F.3d at 231 (quoting Johnson, 110 F.3d at 310).

The Fifth Circuit has explained that "[t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights."  Id. at 686 (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)).  At the same time, the Fifth Circuit has emphasized that "[p]risoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts."  Adeleke v. Fleckenstein, 385 F. App'x 386, 387 (5th Cir. 2010) (per curiam) (unpublished) (citing Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)).  An inmate must allege more than his personal belief that he is

the victim of retaliation.  Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation

omitted).  "Mere conclusory allegations of retaliation will not withstand a summary judgment

challenge.  The inmate must produce direct evidence of motivation or, in the more probable

scenario 'allege a chronology of events from which retaliation may plausibly be inferred.'"

Woods, 60 F.3d at 1166 (citations omitted).

### a) **Mere threats to deny access to the law library are de minimis.**

Plaintiff alleges that on April 30, 2009, he submitted an I-60 request to use the law

library and signed his name "Willi Free I Gar'ner."  (D.E. 1, at 6).  He signed out of the library

to use the restroom, and upon his return, Officer Walden asked to see his prison identification

card.  (D.E. 1, at 7).  Because the identification card listed his name as "Willie Lee Garner,"

Officer Walden threatened to deny him access to the law library until he used his official name

and shaved his beard in accordance with TDCJ grooming policy.  Id.  Defendant Moore observed

this exchange and told Plaintiff that she would support whatever action Officer Walden took.  Id.

She also belittled his efforts to pursue legal relief in court.  Id.  Defendant Martinez was present

as well, but he did not act.[9]  Id.

This same basic scenario was repeated when Plaintiff visited the library on June 26,

2009.  (D.E. 1, at 8).  The entire time he was there, Officer Walden, Defendant Moore, and

Defendant Martinez talked and pointed at him.  Id.  When his library session was over, Officer

Walden told him not to send any more I-60 requests for access to the law library because he

failed to comply with TDCJ grooming policy, did not use his proper name to sign the library

logbook, and because he was filing grievances and sending legal letters complaining about his

---

[9] This incident was described in grievance number 2009143670, which was filed on April 30, 2009.  (D.E. 39-1, at 5-6).

treatment by Defendants.  Id.  Again Defendants Moore and Martinez heard this conversation, but declined to intervene.  Id.  Defendant Moore continued to profess support for whatever action Officer Walden elected to take and declared that she would "not be bluffed by no Judge."[10]  Id. at 9.  Additionally, Plaintiff complains that Officer Walden insulted him with racist language during one or both of these encounters.  (D.E. 44, at 4, 7).

Plaintiff never claims that he was expelled from the law library during or immediately following these particular incidents.  Therefore, Defendants contend that Plaintiff is essentially protesting Defendant Moore's statements of support for Officer Walden's threatened acts.  (D.E. 39, at 14).  Plaintiff also seems to interpret Defendant Martinez's presence, body language, and failure to object to Officer Walden's threats as constituting retaliatory acts.  At worst, Defendant Moore's declarations and Defendant Martinez's inaction might be considered threats to not act in the event that Officer Walden were to carry out a hypothetical retaliatory action.

The Fifth Circuit, however, explicitly foreclosed all § 1983 claims premised on an allegation that a custodial officer issued a purely verbal or non-verbal threat.  See Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation") (quoting McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983)); Davis v. Durant, 66 F.3d 321, 1995 WL 535102, at *1, *4 (5th Cir. Aug. 7, 1995) (per curiam) (unpublished) (issuance of racial slur was verbal harassment that did not constitute a constitutional violation).  This rule extends to retaliation actions.  See Brown v. Craven, 106 F. App'x 257, 259 (5th Cir. 2004) (per curiam) (unpublished) (applying McFadden in a retaliation analysis).  Consequently, courts have

---

[10] This incident was described in grievance number 2009184857.  (D.E. 39-1, 22-23).

declined to find actionable retaliation where an officer's threats were not realized.  See Arita v. Stagg, No. 09-0158, 2010 WL 370343, at *6 (M.D. La. Jan. 29, 2010) (unpublished) (alleged retaliatory conduct consisting of threats and verbal abuse was de minimis); Cobb v. Simmons, No. 2:09-CV-0034, 2009 WL 2016072, at *10-11 (N.D. Tex. July 9, 2009) (unpublished) (threats implying that a major disciplinary action will be brought was de minimis for purposes of retaliation analysis).  Only where officials actually undertake positive action for retaliatory purposes do such adverse actions amount to actionable retaliation.  See Hart v. Hairston, 343 F.3d 762, 763-64 (5th Cir. 2003) (per curiam) (disciplinary proceeding brought in response to plaintiff's filing of a grievance was a retaliatory adverse act).

Plaintiff does not specifically allege that Defendants Moore and Martinez actually took any positive action that was adverse to his interests during either of these complained-of incidents, and the record does not provide facts indicating otherwise.  To the extent that Plaintiff objects to any verbal or non-verbal communication intimating that he would not be allowed into the library going forward, he cannot identify a retaliatory adverse act and show that it was more than de minimis.[11]  It is therefore respectfully recommended that Plaintiff's claims of retaliation

---

[11] In a related argument involving the quality of harm at stake in this case, Defendants assert that Plaintiff has not alleged an injury sufficient to allow him to sue.  (D.E. 39, at 6).  They refer to the fact that from July 16, 2007 to May 19, 2011, Plaintiff successfully prosecuted Garner v. Gutierrez, No. C-06-218.  Because he ultimately obtained a court order allowing him to keep his quarter-inch beard, (D.E. 39, at 7), Defendants submit that any alleged retaliation during that time did not adversely impact his ability to obtain legal relief.

The Supreme Court has explained that constitutional standing consists of three elements:

> First, the plaintiff must have suffered an "injury in fact"–an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and conduct complained of–the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

based on the events of April 30, 2009 and June 26, 2009 be dismissed.

        **b)**     **The delay in delivery of Plaintiff's requested supplies is <u>de</u> <u>minimis</u>.**

Plaintiff claims there were numerous instances when he failed to obtain legal supplies and indigent materials that he requested throughout the month of December 2009.  (D.E. 1, at 10-12).  The first incident occurred on December 1, 2009, while Plaintiff's unit was on lock-down.  <u>Id.</u> at 10.  He sent Defendant Fernandez an I-60 requesting indigent supplies, a writ envelope, and three xeroxed cases.  <u>Id.</u>  When Defendant Fernandez came to his pod to deliver legal materials to other inmates, she did not bring his requested supplies and ignored his attempts to get her attention.  <u>Id.</u>  That night, during mail call, he received his indigent envelope with a letter informing him that supplies are issued on Mondays.  <u>Id.</u>  He had no other problems resubmitting another I-60 that weekend.  <u>Id.</u>

Around December 7, 2009, Plaintiff sent another I-60 seeking supplies and legal

---

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992) (citations omitted).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  <u>Id.</u> at 561 (citing <u>FW/PBS, Inc. v. Dallas</u>, 493 U.S. 215, 231 (1990)).  Failure to establish constitutional standing means that a federal court lacks subject matter jurisdiction over the action.  <u>In re Weaver</u>, 632 F.2d 461, 462 n.6 (5th Cir. 1980).

        Plaintiff claims that Defendants engaged in retaliatory actions against him for pursing his RLUIPA action, and for filing numerous grievances against them.  (D.E. 1, at 6-12).  However, the focus of a standing inquiry in the context of a retaliation claim must center on the question of "whether there has been an obstruction of the exercise of a constitutional right."  <u>Woods</u>, 60 F.3d at 1165.  The aim of these purportedly retaliatory acts was to restrain him from complaining about their administration of the law library.  This would constitute an attempt to keep Plaintiff from exercising his constitutional right to access the courts and file grievances.  <u>See id.</u> at 1164 ("a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct").  Therefore, Plaintiff has shown that he possesses standing to sue for retaliation.

        To the extent that Defendants claim that Plaintiff has no standing to sue for an <u>access to the courts</u> claim, they are correct that he has not suffered an "injury in fact" because he was able to prevail in his prior legal action.  Because the right of access is not a "freestanding right," <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996), the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts.  <u>Chriceol v. Phillips</u>, 169 F.3d 313, 317 (5th Cir. 1999) (citing <u>Lewis</u>).  This "[a]ctual injury" must constitute "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  <u>Lewis</u>, 518 U.S. at 348.  Plaintiff has not alleged that his ability to prosecute his earlier RLUIPA lawsuit was compromised by Defendants' actions, and it is undisputed that he has been successful in obtaining a court order allowing him to wear a beard.  Therefore, he would not have standing to sue for a violation of his right to access the courts with respect to his prior RLUIPA action.

materials, but did not receive them.  Id.  On December 8, 2009, Defendant Martinez delivered

legal material to the inmates in his pod.  Id.  When asked why no supplies were delivered,

Defendant Martinez allegedly said "I know nothing about your material."  Plaintiff believed this

was a lie based on his body language.  Id.  Nevertheless, Defendant Martinez agreed to look into

the matter.  Id.

On December 10, 2009, Defendant Martinez came into the pod to deliver and receive

inmate materials.  Id. at 11.  He did not bring Plaintiff any materials, and ignored Plaintiff's

attempts to get his attention.  Id. at 11.  On December 15, 2009, Defendant Martinez again did

not give Plaintiff any supplies or legal material.  Id. at 11.  When pressed for an explanation,

Defendant Martinez told Plaintiff that he would talk with Defendant Moore and Officer Walden.

Id. at 11.

On December 17, 2009, Officer Walden delivered legal material, but warned that he

would not supply a writ envelope unless Plaintiff signed his name correctly and stopped filing

grievances.  Id. at 11.  On December 19, 2009, Defendant Fernandez delivered xeroxed cases to

Plaintiff.  Id. at 11.  When asked why she was so late, she replied that she had been busy filling

requests and delivering books.  Id. at 11.  He asked her to send him the envelope that night

during mail call, but it was not delivered.  Id. at 11.  It was not until January 12, 2010 that

Plaintiff finally received the envelope.  Id. at 11-12.

Defendants argue that there was no record Plaintiff had properly requested the materials

and supplies on either December 1 or December 7, 2009.  (D.E. 39, at 16).  Defendant Moore

directly addresses Plaintiff's failure to obtain indigent legal materials:

> I am aware that on several occasions in 2009 Garner was not
> granted indigent legal materials because he refused to state any

reason why he needed such materials.  As indigent supplies are
paid for by Texas taxpayers, issuance of indigent supplies requires
justification from any inmate requesting them.

(D.E. 39-3, at 2).  This requirement that each inmate explain why they need the requested

indigent materials is made explicit on each I-302 indigent supply request form, which specifies

that "[y]ou must utilize and exhaust your previous issuance prior to completing a new request for

supplies" and "[j]ustification to receive the below requested supplies must be placed **on the back**

**of this form**."  See, e.g., (D.E. 39-2, at 12) (emphasis in original).  While the library did have

four of Plaintiff's I-302 indigent supply requests, including one filed on December 1, 2009, none

of the supply request forms included the required justifications written on the back of the form.

Id. at 12, 14-16.

      The record also discloses that Plaintiff filed two I-60 requests for xeroxed case materials,

as well as the other stationery items he had already requested in his I-302.  Id. at 27, 29.

Defendant Moore acknowledges that she is "aware that Garner habitually makes multiple

requests on the same form, which is contrary to TDCJ rules."[12]  (D.E. 39-3, at 2).  Nevertheless,

he was eventually provided xeroxed cases and other materials he requested in the I-60.  (D.E. 1,

at 11-12; D.E. 39-2, at 40).

      To recapitulate, Plaintiff has filed numerous invalid, incomplete, or duplicative requests

for legal supplies and stationery.  He has never signed any of his forms with his official name

"Willie Lee Garner," instead insisting on using his alias "Willi Free I Gar'ner."[13]  The record

---

[12] During the TDCJ investigation, Defendant Moore suggested that Plaintiff's failure to separate his
indigent supply requests from his case requests contributed to the delays he experienced.  (D.E. 39-2, at 25).

[13] Although Defendants have not cited to a TDCJ rule explicitly requiring inmates to use their official
name, an email from a grievance investigator suggests that this rule exists.  (D.E. 39-2, at 47).  Regardless, the
proposition that a prisoner may use any alias when requested to provide his "name" is absurd.

20

does not indicate that he has ever completed a request for supplies that conformed to TDCJ

policy.  Despite these failures, Defendants point out that Plaintiff did receive the materials he

requested in December 2009.  (D.E. 39, at 17).  Plaintiff does not deny this contention, and he

has conceded that he eventually received all of the supplies that he sought–to wit, the xeroxed

cases, the stationery, and the writ envelope.  (D.E. 1, at 10-12).  He therefore protests

Defendants' speed of delivery and their willingness to deliver rather than their failure to deliver.

      Assuming arguendo that Defendants' efforts to delay Plaintiff from obtaining his

requested supplies rises to the level of a retaliatory adverse act, such an act is not of a kind that

would deter an ordinary person from exercising their rights.  Morris, 449 F.3d at 686.  Plaintiff

has not even alleged that he was prejudiced or intimidated by any delay in the delivery of his

requested supplies, and the longest amount of time that he had to wait for a requested item was

six weeks.[14]  Courts have determined that inconsequential delays in delivery of items to inmates

have not amounted to more than de minimis retaliatory acts.  See Roseboro v. Gillespie, 791 F.

Supp. 2d 353, 374 (S.D.N.Y. 2011) (collecting cases); Zigmund v. Solnit, 165 F.3d 16, 1998 WL

769747, at *1 (2d Cir. Oct. 27, 1998) (unpublished order) (in context of access of courts claim,

documents that were filed in court after a two week delay was de minimis absent actual

prejudice); Jebril v. Joslin, No. C-07-436, 2008 WL 2491658, at *3 (S.D. Tex. June 18, 2008)

(unpublished) (an eight day or more delay in delivery of legal mail would be a de minimis

retaliatory act); Brown v. Runnels, No. S-04-0055, 2006 WL 1305277, at *4, *7 (E.D. Cal. May

11, 2006), (unpublished findings and recommendation adopted by 2006 WL 2601649 (E.D. Cal.

Sept. 11, 2006) (unpublished)) (a four month delay in delivery of typewriter ribbon was no more

---

    [14] Plaintiff requested a writ envelope on December 1, 2009.  (D.E. 39-2, at 4).  He asserts that he did not
receive this envelope until January 12, 2010.  (D.E. 1, at 11-12).

than a de minimis retaliatory act given that plaintiff had other means to write).

Moreover, the record suggests that Plaintiff received some or all of his requested items in less than six weeks.  On December 14, 2009, he submitted a I-302 request for two carbon copy sheets, a writ envelope, and a pen.  (D.E. 39-2 at 30).  Contrary to Plaintiff's assertions, the record indicates that these items were all issued on or around the same day, including the writ envelope.  Id. at 24-25, 29-30.  He was also issued the requested quantities of paper and business envelopes on December 21, 2009, the same day he requested those supplies.  Id. at 31-32.  In addition, he acknowledges that he received law materials and xeroxed cases on December 17 and December 19, 2009.  (D.E. 1, at 11).  The fact that Plaintiff received these items in a relatively timely manner undercuts any suggestion that the delays were more than de minimis.

Furthermore, Plaintiff cannot establish that Defendants' retaliatory motive was the but-for cause for the asserted retaliatory adverse acts.  Every I-302 form instructs inmates to justify their supply request, and TDCJ policy does not permit inmates to make multiple requests on a single form.  (D.E. 39-3, at 2).  Because TDCJ employees are expected to deny inmate requests that do not conform to TDCJ standards, the insistence on having Plaintiff correctly submit his requests for supplies normally does not permit the inference that retaliation is afoot.

On the other hand, Defendants acknowledge that they have not consistently denied improperly completed requests, and they concede that they have occasionally yielded to Plaintiff's demands without requiring him to submit requests conforming to TDCJ standards.  (D.E. 39, at 17).  Nevertheless, they are correct to observe that the mere fact they indulged Plaintiff on certain occasions does not mean that their adherence to TDCJ policy in these complained-of instances was motivated by retaliatory animus.  (D.E. 39, at 17).

While the abrupt termination of an accommodation could be tainted with retaliatory motive, the record does not support such an inference.  As an initial matter, Plaintiff has not alleged that he has been able to consistently secure supplies by submitting I-60s and indigent supply request forms that did not conform to TDCJ policy.  The record supports the opposite conclusion that he has never been able to reliably obtain supplies because of his complete refusal to justify inmate supply request forms and his penchant for making multiple requests on the same I-60 form.  Moreover, Defendant Moore has testified that despite his refusal to fill out request forms correctly, the law library had always erred on the side of fulfilling his requests to whatever extent possible.  (D.E. 39-3, at 2).  As a consequence of inconsistent enforcement of the rules toward Plaintiff, Defendant Moore was rebuked on different occasions by a grievance investigator when it was discovered that she had acquiesced to his demands without requiring full compliance with TDCJ policy.  (D.E. 39, at 18; D.E. 39-2, at 35-36, 40, 47, 54).  This behavior does not fit the pattern of a person who bears retaliatory animus toward Plaintiff.[15]

In addition to sworn statements categorically denying that Defendants retaliated against Plaintiff, they have also supported their motion for summary judgment with competent documentary evidence showing that his requested supplies were issued to him in a relatively timely manner.  Although Plaintiff's verified complaint recounts his difficulty in obtaining the requested supplies, see King v. Dogan, 31 F.3d 344 (5th Cir. 1994) ("A plaintiff's verified complaint can be considered as summary judgment evidence to the extent that it comports with the requirements of FED. R. CIV. P. 56(e).") (citation omitted); Hart, 343 F.3d at 764 n.1 (sworn

---

[15] During an inspection of Plaintiff's cell many months later on December 2, 2010, he was discovered to be in possession of an "excessive" amount of legal supplies.  (D.E. 39-2, at 47).  This further undercuts his assertion that he was chronically undersupplied by the prison law librarians.

declaration "under penalty of perjury" is competent summary judgment evidence), he has not

alleged "specific facts" showing that this was the fault of Defendants as required by Rule 56(e)

of the Federal Rules of Civil Procedure.  Anderson, 477 U.S. at 248-49 (citation omitted).  More

importantly, he has not shown that any delay was more than de minimis given that he has

suffered no apparent harm.  Because Plaintiff has not met his summary judgment burden, it is

respectfully recommended that his claims regarding the delay in obtaining his supplies be

dismissed.

> **c)**     **Plaintiff would have been unable to access the law library even if Defendant Moore bore retaliatory animus toward him.**

Plaintiff also asserts that Defendant Moore denied numerous I-60 requests to schedule a

"lay-in" for time in law library because she was "angry/upset with Plaintiff writing a Judge

whom severely admonished her incompetence" during a hearing held on July 20, 2007 in Garner

v. Morales.  (D.E. 1, at 6).  As a consequence, he alleges that at least fifteen of these requests

were denied between May 3, 2009 and July 2, 2009.  Id. at 8-9.  Defendants contend that, to the

extent Plaintiff has exhausted these claims against Defendant Moore,[16] he has failed to prove any

specific retaliatory act, injury, or causation.  (D.E. 39, at 15-16).

The record is rife with I-60 requests addressed to Defendant Moore requesting that she

permit him to use the library.  (D.E. 1-1, at 30-38; D.E. 1-2, at 1-22; D.E. 1-3, at 1-5, 14-21).

Notwithstanding these requests, which were apparently not granted, Defendant Moore has sworn

in her affidavit that she has no knowledge of any specific instance Plaintiff was denied access to

---

[16] Because Plaintiff's grievance regarding his indefinite exclusion from the law library only implicated Defendant Moore and Officer Walden, (D.E. 39-1, at 22), it is respectfully recommended that any claim against Defendant Fernandez and Defendant Martinez regarding his inability to access the library be found unexhausted. See Johnson, 385 F.3d at 517 (prisoner must give officials sufficient details regarding who was involved in the incident to permit a fair opportunity to address the problem in order to properly exhaust claims).

the law library due to his refusal to use his official name.  (D.E. 39-3).  Her assertion is belied by

a statement that she gave to a grievance investigator on May 1, 2009, in which she explained that

Plaintiff failed to provide his official name on his request and provided an example of the invalid

request form.  (D.E. 39-1, at 10, 13).

Nevertheless, even if Plaintiff has alleged a sufficient retaliatory adverse act, he would be

unable to show that Defendant Moore's purported retaliatory animus toward him was the but-for

cause of his inability to access the law library.  The Fifth Circuit has explained that causation

requires showing that but-for the retaliatory motive the adverse act would not have occurred.

McDonald, 132 F.3d at 231 (quoting Johnson, 110 F.3d at 310).  In determining whether the

retaliatory motive caused the retaliatory act, the Fifth Circuit has taken into account the temporal

proximity between the inmate's exercise of his First Amendment right provoking the retaliation

and the retaliatory act itself.  See Bibb, 541 F.3d at 273-74 (acknowledging that temporal

proximity is a factor in finding causation, but permitting a retaliation claim to proceed even

though defendants committed adverse acts a month after exercising his First Amendment rights

given the incriminating comments of the guards) (citations omitted).

Plaintiff maintains that all acts of retaliation by Defendant Moore were motivated by her

hostility toward him dating back to the court hearing held on July 20, 2007.  (D.E. 1, at 6).  Yet,

nearly two years had elapsed by April 30, 2009, the date Plaintiff first complains that Defendant

Moore began retaliating against him.  Id.  Such a long lapse of time between the event providing

the impetus for retaliatory motive to the time that a retaliatory act was carried out precludes any

plausible inference of retaliation.  See Robinson v. Schilling, 273 F.3d 1094, 2001 WL 1085112,

at *1 (5th Cir. Aug. 30, 2001) (per curiam) (unpublished) (eight month gap between filing of

25

grievance and purportedly retaliatory act was cited as a factor weighing against a finding of causation); Walding v. United States, No. 08-CA-124, 2009 WL 890265, at *12 & n.9 (W.D. Tex. Mar. 30, 2009) (unpublished) (emphasizing unexplained temporal gap between alleged incident giving rise to retaliatory intent and ultimate retaliatory act in prisoner civil rights action) (citing Allen v. Thomas, 388 F.3d 147, 150 (5th Cir. 2004)).  Even if Plaintiff can be understood to claim that Defendant Moore had retaliated on or around January 29, 2008 for failing to fill his indigent supply request properly,[17] (D.E. 1, at 6), he still fails to explain the six month gap, and unlike the plaintiff in Bibbs, he provides no additional proof of a retaliatory scheme outside the conclusory allegations in his complaint.  The chronology analysis in Woods establishes that it is simply unlikely that a person would hold a grudge for so long without acting.  Therefore, Plaintiff has not established a chronology from which retaliation may be reasonably inferred. Bibbs, 541 F.3d at 273 (quoting Woods, 60 F.3d at 1166).

Accordingly, it is respectfully recommended that Plaintiff's retaliation claim against Defendant Moore be dismissed for failure to prove causation.

**2.      Step 2 – objective reasonableness.**

Because Plaintiff has failed to state a constitutional violation as to Defendants, the Court need not examine whether Defendants' actions were reasonable.  See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

---

[17] No grievances referencing this event appear in the record, therefore it is very likely that these claims have not been exhausted.

26

## VI.  RECOMMENDATION

For the reasons set forth above, it is respectfully recommended that Defendants' motion for summary judgment, (D.E. 39), be granted, and this action, (D.E. 1), be dismissed.

Respectfully submitted this 8th day of March 2012.


BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

27

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).